M. H. Taylor, C. H. Strong, R. H. Townsend and J. W. Little, Trustees under the will of William L. Scott, deceased, *v.* The Erie City Passenger Railway Co. and the Erie Electric Motor Company, Appellant.

*Street railways—Construction of, on highways—Consent of property owner—Estoppel.*

The fact that a street railway company has constructed its line on a highway, with the consent of the owner of abutting property, will not entitle the company to construct its line on a highway abutting on land subsequently acquired by the consenting owner, without obtaining from such owner his consent as to the after-acquired land.

While a street railway company, which has constructed its line on a highway without the consent of the abutting owner and also without objection by such owner, may maintain and operate its railway upon such highway, it has no right to construct an additional switch, or remove and enlarge one previously constructed, in front of the land of a nonconsenting owner, so as to increase the damages thereto without the consent of the owner.

Argued April 26, 1898. Appeal, No. 344, Jan. T., 1897, by defendant, from decree of C. P. Erie Co., Sept. T., 1897, No. 2, on bill in equity. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for an injunction to restrain defendants from constructing a certain siding or switch in front of the " Rawle farm " in Mill Creek township.

The facts appear by the opinion of WALLING, P. J., which was as follows:

I find the following facts:

1. There is an ancient common public highway leading westerly from Erie city through the township of Mill Creek, in said county, known as the " Lake road," of the width of fifty feet. Said highway is a county road, not in any borough or city. On the south side of said highway, and about two and one half miles west of the western limits of said city, is situate a public cemetery known as " Trinity cemetery." About 3,500 feet north of said highway, and nearly opposite to said cemetery is the place known as the " Head," which is a popular summer

resort, situate at the head of Presque Isle bay. About one mile east of said cemetery, and situate on the south side of said highway, is the farm known as the "Rawle farm," containing about 100 acres of land, and abutting upon said highway for a distance of about eighty-seven rods. Prior to May 16, 1891, the said farm was, and had been for many years, owned by the surviving husband and heirs at law of Harriet R. Rawle, deceased. On said date the owners of said farm conveyed the same by deed and in fee to William L. Scott, now deceased. Above plaintiffs are now the owners of said farm in trust under Mr. Scott's will.

2. In the spring of 1889 the above defendants, desiring to construct an electric street passenger railway in said Lake road from the western limits of the city of Erie to said Trinity cemetery, obtained from the owners of property abutting on said street between the points named a permit in writing as follows : "We, the undersigned owners of property in West Mill Creek, fronting on the Lake road, from the western boundary of the city limits to Trinity cemetery, do hereby grant the Erie City Passenger Railway Company and its lessees the right to occupy and to extend their line of railway, with the necessary turnouts, and to operate the same through and along the said Lake road in front of our respective properties, to Trinity cemetery. And we do hereby release the said railway company from all claims for damages for the occupation of said road, or so much thereof as may be necessary for their right of way for said tracks, and from any and all other damages we may sustain by the construction of said railway and its operation which may be unavoidable by its construction and operation. Erie, Pa., May 11, 1889."

The above permit was signed by said William L. Scott and also by the owners of all the land abutting upon said road, between the points named, except the owners of the said "Rawle farm" and of perhaps one other farm.

At that time Mr. Scott owned six or seven farms abutting upon said road, but did not then own the Rawle farm.

Also to enable defendants to construct their railway in said road, the road commissioners of Mill Creek township on June 3, 1889, duly passed a resolution as follows:

"Resolved, That said Erie City Passenger Railway Company

and its lessee, the Erie Electric Motor Company, be and they are hereby granted the right to occupy and extend their railroad through and along the public highway known as the Lake road from the western limits of the city of Erie to Trinity cemetery: Provided, that said railroad shall be constructed south of the center of the road, except at points where cross-overs, switches and turn-outs are required; and provided that said companies shall bear all expenses of laying said railway and shall cross streets at grade and all such crossings shall be kept in proper condition by said company; and all private crossings shall be kept in proper condition by the company without any expense to the property owners. The poles of said company are to be set as near to the south fence as practicable."

This resolution was accepted by the said Erie City Passenger Railway Company; and pursuant to said permit and resolution the defendants did, during the year 1889, construct a single track passenger railway along and upon the south half of said road from the said city limits to Trinity cemetery; the same being built as near as practicable to the south line of the highway.

During the year 1889 or 1890 the defendants built a switch or siding in front of the western part of the said Rawle farm, the entire length of which switch was 253 feet, known as the " Tracy switch," and the defendants have been in the possession and occupancy of said railway ever since it was built. The owners of said Rawle farm made no objection to the construction of said railway, and have made no objection to its use and occupancy by defendants constructed as above stated; but none of the owners of said Rawle farm signed said permit or gave defendants any permission to build said railway or switch. At the time the same were built none of the owners lived upon the said farm or in the city or county of Erie, and there is no evidence that any of them had then any knowledge of the construction of said railway or switch in front of said farm. Said farm is the only land abutting on said Lake Road in that immediate neighborhood, the owners of which did not sign said permit.

At the time said railway was built in said Lake Road as above stated it was the intention of the defendants to extend said railway to or near to the " Head," so as to secure the traffic to and

from that point, and to that end in February, 1890, the defendants entered into a written contract with said William L. Scott for the right of way, for a term of ten years, across his "Algeria farm" and into the place known as the "Head," and described in said agreement as "Massassauga Point," which written agreement was given in evidence on the trial of this case. To reach the point where said right of way diverged from said Lake road it became necessary for defendants to further extend said railway in said highway, and for that purpose the road commissioners of said township on April 19, 1890, adopted a resolution as follows (omitting certain provisions not important to this case):

"Whereas, The Erie City Passenger Railway Company and the Erie Electric Motor Company, its lessee, are desirous of extending their line along the Lake road, along the cemetery: Therefore, be it resolved the Erie City Passenger Railway Company and the Erie Electric Motor Company, its lessee, are hereby granted the right to extend their track along the south side of the road in Mill Creek township, to the west entrance of Trinity Cemetery, and across said road at grade to extend their line to the 'Head.'"

During the year 1890, the defendants did extend their road along said road and to the "Head," and have possessed and used the same ever since.

3. Prior to July, 1893, the defendants had built and were operating five switches in the Lake road between the city limits and Trinity cemetery. These switches were constructed at different times, and were of greatly different distances apart, and mostly too short to properly accommodate the traffic on this line—and I find as a fact that they were not intended by defendants as the permanent switches for this line. In the early part of 1893 the defendants began to lengthen these switches and to reconstruct and equalize the same in the Lake road, when on July 3, 1893, they were stopped by an injunction from this court, issued at the suit of the road commissioners of Mill Creek township, against the above defendants, in No. 3, September term, 1893, in equity. That case was so proceeded in that on August 2, 1897, this court made therein a final decree, as follows: "And now, August 2, 1897, this case having been heretofore fully heard and argued by counsel, and thereupon,

upon due consideration thereof, it is ordered, adjudged and decreed that the injunction heretofore granted be and is hereby modified so as to permit the defendants to relocate their said five switches on their line on the Lake road between the western limits of the city of Erie and the western entrance to Trinity cemetery, so as to approximately equalize the distance between them, etc. But that the entire length of no one of said switches, including the leaders, that is the whole length from the points where the tracks diverge, shall exceed 360 feet, and that as soon as any one of said switches are relocated and constructed, the present switches as far as thus supplied shall be removed from the street by defendants. This order is not intended to interfere with the present length of the Sullivan switch unless the location of the same be changed, and it is further ordered that the defendants pay the costs of this suit, and as thus modified the injunction is made permanent."

4. At a special meeting of the road commissioners of Mill Creek township, held May 6, 1897, at which all of the commissioners were present, a resolution was unanimously adopted as follows : " Resolved, that any permission at any time heretofore granted to the Erie City Passenger Railway Company and the Erie Electric Motor Company or either of them to use any portion of the Lake road west of the city of Erie, for the purpose of extending their track or the track of either of them, or of maintaining or operating the same, be and the same is hereby revoked, so far as the said licenses have not been acted thereon up to this date ; and any permission so far as it may be claimed by these companies or either of them to be a license to them, or either of them to lay any additional track or rails, or to put in new sidings, turn-outs or switches, or to lengthen or extend any turn-outs, sidings or switches already constructed by them, is hereby revoked."

On May 19, 1897, two papers were served upon the defendants, one of which is as follows, and the other in substance the same.

" To the Erie City Passenger Railway Company, and the Erie Electric Motor Company :

" You will take notice that we, the undersigned owners of land in the Lake road, west of the city of Erie, hereby withdraw

any permission heretofore granted to you to occupy the said Lake road in front of our respective properties for the purpose of a street railway, so far as the construction of any new sidings, turn-outs, switches, track or tracks, or the lengthening or extension of any sidings, switches, turn-outs, track or tracks already laid or constructed by you are concerned. Our intention in withdrawing said permission or license being to restrict you to the use of so much of the road as you now use, and to prevent the occupation and use of any further portion of the said road by you from this date.

"ERIE, PA., May 10, 1897."

These papers were signed by above plaintiffs representing the estate of Wm. L. Scott, and also by every other property owner who signed the original permit given to the defendants, or his successor in title excepting the successors to the title of land signed for by F. F. Marshall, Esq.

5. The defendants paid no consideration for any right of way in the said Lake road, but relying upon their faith of their right to occupy said highway, they expended, between the spring of 1889 and July 3, 1893, very large sums of money, aggregating about $200,000, according to the evidence given on the trial of this case. They built the railway over three miles in length; they put up poles and feed wires; bought many extra cars and also extended their plant for generating motive power, etc. The right of the defendants in this highway arises from above quoted permit of abutting land owners, from the said resolutions of the road commissioners of Mill Creek township and from the fact that they have constructed and have operated the railway in said highway without objection and have made expenditures as above stated.

6. None of the owners of land abutting upon said Lake road were parties to the said equity suit in the court of No. 3, September term, 1893. The plaintiffs in this case did employ counsel to assist the attorney for the road commissioners in the trial of that case, which counsel did so assist; but above plaintiffs did not intervene as parties to that suit, and made no application for permission so to do, and did not authorize their counsel to make them parties to said suit.

7. Near the eastern boundary of the said Rawle farm there

is a public highway extending southwardly from the Lake road and known as "Pittsburg avenue." At about 3 o'clock in the afternoon of August 3, 1897, the defendants took a large force of men, also rails, ties, etc., to that part of the Lake road in front of the Rawle farm, and at once began the rapid construction of a switch or turn-out extending westwardly from at or near the west line of said Pittsburg avenue along, in the south half of said Lake road, in front of said Rawle farm, for a distance of three hundred and fifty-nine feet, and continued the work upon said switch until about 11 o'clock that night. The work of building said switch was begun without notice to or knowledge of above plaintiffs, and on learning thereof the said plaintiffs at once had the bill in this case prepared, and as soon as possible presented it to the judge of this court, who was on that day and evening some fourteen miles from the courthouse (a fact which we think this court should take notice of), and on same evening complainants having presented an injunction bond in the sum of $500, which was approved, a preliminary injunction was awarded and issued, commanding the defendants to desist from constructing, maintaining or operating the said proposed switch in front of the premises of complainants, which preliminary injunction was served upon the defendants by the sheriff on same evening, to wit: August 3, 1897, at 10:50 o'clock P. M., as defendants' officers and employees were leaving the place where they had been at work. Before said injunction was served said switch had been so far constructed that defendants had run certain cars over it, but it was not then completed, and the feed wire, which forms a necessary part of the switch in its practical operation, was put up the next day, to wit: August 4, 1897, by one of defendants' employees, who it is shown had then no knowledge of the injunction; and the evidence also shows that some trifling work was afterwards done on the switch by driving a few spikes and shoveling a little gravel. The switch is not now entirely completed so as to be entirely safe for use with heavily laden cars. The said new switch as constructed by defendants extends its entire length in front of said Rawle farm, the west end thereof being about in front of the dwelling house on said farm, and at a point where the tracks are laid in a diagonal direction it passes at grade over the farm crossing of said farm, and the frog of said switch

is laid in said crossing.    The said switch is a damage to the said farm, and if permitted to remain there will constitute a permanent annoyance and inconvenience to the owners and occupants thereof, and by reason of the facts as above stated the owners of said farm sustain thereby a special injury, not common to the general public; and the location of said switch as above stated will cause a greater damage to the said farm than is or was caused by the old switch known as the "Tracy switch."

8. Defendants have not paid or secured, or offered to pay or secure, plaintiffs for any damages that will or may result by reason of the location, construction and operation of said new switch as above stated.    The said new switch passes in front of the farm residence of D. D. Tracy, which is there situated on the north side of said Lake road.

9. Pursuant to said decree made by this court on August 2, 1897, in No. 3, September term, 1893, the defendants have reconstructed and permanently located the switch known as the "Ball switch," the center of which is 3,038 feet east of the center of the new Tracy switch.    And the defendants have also pursuant to said decree relocated and permanently constructed a switch known as the Hermann switch, the center of which is 2,214 feet west of the center of the said new "Tracy switch."    [According to said decree the defendants are entitled to relocate and permanently construct the "Tracy switch" so as to approximately equalize the distance between the said "Ball switch" and the said "Hermann switch," and the said new "Tracy switch," as located and constructed by the defendants, does not so equalize the distance between the said "Ball" and "Herman switches," and is not in conformity with said decree; but on the contrary the said new "Tracy switch," is 824 feet nearer to the said "Hermann switch" than to the "Ball switch," according to the measurements submitted by defendants and agreed by both parties to be correct.    To equalize the said distance the said new "Tracy switch" should be constructed about 412 feet east of its present location.] [1] If so constructed it would be entirely east of the said Pittsburg avenue, and would not pass over any farm crossing, and would not be in front of or interfere with any dwelling house or other building.    It is necessary, to properly accommodate defendants' business, to have a switch near the Pittsburg avenue, but it is

not necessary for the accommodation of said business to have a switch at the point where the defendants have built the new Tracy switch in front of said Rawle farm, but on the contrary it will better accommodate defendants' business to have said switch built east of said Pittsburg avenue, and said new Tracy switch in the place where constructed by defendants, does unnecessary damage to private property. The said street railway in the Lake road is largely a summer line; and from May until October the traffic over this line is very large. On days when there are picnics or other attractions at the "Head," the said travel over this line is especially heavy, and makes it necessary to run cars over this line late in the night; for which reason it is especially desirable to have the switches as far as practicable from private residences, as it is a matter of common knowledge that the noise and jar of electric cars passing in and out of switches, the ringing of bells, the stopping and starting of cars, and the conversation between passengers on standing or passing cars, are all matters of annoyance to people living nearby, especially in the night-time. The traffic on this line is increasing from year to year and is much larger now than when the railway was first constructed.

From which facts the following legal conclusions are found:

1. The said Lake road, being a country road, the street railway is an additional servitude thereon, which could only have been legally there constructed by the permission of the road authorities and all of the owners of land abutting thereon. As against the said road authorities and the land, the owners of which gave the above recited permission, the defendants have the right to a single track railway with necessary turn-outs and switches in said Lake road.

2. When defendants had built said railway and expended their money on the faith of said permission or license the same became and is irrevocable, and the said license granted to defendants was not only to construct a railway in the said Lake road, but also "necessary switches," and such power is not exhausted until both the railway and the necessary turn-outs or switches are built, and the right to build a single track railway carries with it as an incident the right to build the necessary switches. And after said railway was constructed, the rights of defendants to necessary switches could not be and are not affected by the acts of the road commissioners and consenting

property owners in attempting to withdraw said permission as to unconstructed switches, etc. In front of the land the owners of which gave the above quoted permit, the defendants have the right to reconstruct permanently their said switches, in accordance with the said decree made by the court in No. 3, September term, 1893; but the rights of defendants against abutting property, the owners of which did not consent to the building of said railway, were not considered or passed upon in said case.

3. [The plaintiffs in this case were not parties to the equity suit in this court, No. 3, September term, 1893, nor legally bound by the decree therein entered.] [2]

4. [The above recited permission of property owners was and is only effective as to the " respective properties " owned by the parties who gave said permission at the time it was given. The owner of the said Rawle farm owns to the center of the said Lake road subject to the right of way of the public in said street, and the construction of said railway by defendants upon the south half of said road in front of said farm was without authority of law. Wm. L. Scott, who afterwards purchased said farm, and the plaintiffs, as his successors in title thereof, have all the rights to object to the extension of said railway in front of said farm that the Rawle heirs would have if still the owners of the same. And the facts that Wm. L. Scott signed the above recited permit and also gave defendants permission to extend their railway across the Algeria farm and to the " Head" do not estop the plaintiffs, nor affect their rights in this case as to the Rawle farm, which was afterwards purchased by Mr. Scott.] [3]

5. [The fact that defendants constructed their railway in front of the Rawle farm in 1889, and have used and operated it since without objection, gives them the right to there continue the said railway as so constructed, and the right to continue the use and operation of the same, but they have no right, under the facts of this case, to construct an additional switch, or remove and enlarge one heretofore constructed in front of said farm, so as to increase the damages thereto, without the consent of the owners. And even were the circumstances such as to justify the defendants in extending their railway, or building a new switch in front of this farm, it could not lawfully be

done until the plaintiffs had been first paid or secured for the damages occasioned thereby.] [4]

6. This court has the right to control the acts of the defendant corporations in the premises so as to prevent unnecessary damages being done to private property.

7. [The construction, etc., of the said "new Tracy switch" in the south side of said Lake road in front of the said Rawle farm is, as so constructed, an unauthorized structure in said public road against which the plaintiffs who sustain special damages thereby are entitled to the equitable relief prayed for by injunction. And the defendants acquired no additional rights from the fact that by hurried work, extending into the night, with a large force of men, they succeeded in so far constructing said switch as to be able to run cars over it, before the injunction could be served. Such acts look like a race against the law which should never be successful.] [5]

As authorities bearing upon many of the questions here discussed are cited in the opinion filed in No. 3, September term, 1893, as above referred to, I do not think it necessary to again cite them in this case.

#### DECREE.

[And now, August 30, 1897, this cause having been fully heard and argued by counsel, and thereupon, upon due consideration thereof, it is ordered, adjudged and decreed that the preliminary injunction granted in this case on August 3, 1897, be and the same is hereby made permanent, and the defendants, the Erie Passenger Railway Company and the Erie Electric Motor Company, their agents, servants and employees, are, each of them, perpetually restrained and enjoined from constructing, maintaining or operating the said switch known as the "new Tracy switch," situate and being in the said Lake road and extending westwardly from Pittsburg avenue in front of complainant's farm known as the Rawle farm. And the defendants are hereby ordered and directed to take up and remove said switch from the street in front of the complainant's said Rawle farm within ten days from this date; and it is further ordered that defendants pay the costs of this case.] [6]

Errors assigned were (1–6) portions of opinion and the decree as above.

*J. M. Sherwin* and *S. A. Davenport*, with them *T. A. Lamb*, for appellant.—The company had the right to build the switch : Cleveland & Pittsburg R. R. Co. v. Speer, 56 Pa. 335 ; Ridge Turnpike Co. v. Stoever, 2 W. & S. 548 ; Clarke v. Bridge Co., 41 Pa. 157 ; Millvale Boro. v. Evergreen Ry. Co., 131 Pa. 1 ; Potter v. Scranton Traction Co., 176 Pa. 271 ; Pottsville v. People's Ry. Co., 148 Pa. 175 ; Rafferty v. Cent. Traction Co., 147 Pa. 591 ; Booth on Street Railways, 42 ; Halsey v. Rapid Transit Ct. Ry. Co., 20 Atl. Rep. 859 ; Corcoran v. Brown, 3 Cranch. C. C. 143 ; Bigelow on Estoppel (5th ed.), 355 ; Chester v. Pennell, 6 Del. Co. 61 ; Building & Loan Assn. v. McCaughey, 1 Chest. 504 ; Barger v. Burr, 4 Luz. L. Reg. 316 ; Washabaugh v. Entriken, 34 Pa. 74 ; Catawissa R. R. Co.'s App., 2 Walk. 175.

Much greater injury would be done to the public who traveled over this railway for over eight years by granting the injunction than would be done to the plaintiffs by refusing it, and defendants submit that for that reason alone it should be refused : Heilman v. Lebanon, etc., Ry., 175 Pa. 188 ; Heilman v. Lebanon, etc., Ry., 180 Pa. 627 ; Penna. R. R. v. Montgomery Co. Pass. Ry., 167 Pa. 62.

*G. A. Allen*, *Louis Rosenzweig* and *Frank Gunnison*, for appellees, were not heard, but in their printed brief said : The defendants had absolutely no right originally to construct their line of railway upon the portion of the Lake road in front of the " Rawle farm," its owners not having given their consent to its construction : Penna. R. R. v. Montgomery Co. Pass. Ry., 167 Pa. 62 ; Heilman v. Lebanon, etc., Ry., 175 Pa. 189 ; Fidelity, etc., Co. v. Phila., etc., Ry., 6 Dist. Rep. 737.

PER CURIAM, May 9, 1898 :

We find no error in the decree from which this appeal was taken. Our consideration of the specifications of error has led us all to the conclusion that there is nothing in either of them of which the defendants have any just reason to complain. The learned trial judge's findings of fact and conclusions of law are quite as favorable to them as they should have been. There is nothing in either of them that requires discussion.

Decree affirmed and appeal dismissed at the defendants' costs.